THE PEOPLE, RESPONDENT, *v.* DAVID, APPELLANT.

APPEAL from the District Court of San Juan, Section 2.

No. 602.—Decided June 23, 1913.

FALSIFYING EVIDENCE — FRAUDULENT ALTERATION OF LETTER. — Having examined the law and the evidence in this case it was held that the three essential elements of the crime of falsifying evidence charged were proven, to wit: 1. The existence of a legal proceeding; 2. A letter fraudulently altered; 3. The offering in evidence by the accused in said legal proceeding of said letter as genuine when he knew that it had been fraudulently altered.

VERDICT OF JURY—POLLING JURY—STATEMENTS OF JUROR.—After the jury had returned its verdict the court asked each juror individually if that were his verdict, to which each juror answered in the affirmative, one of them adding that he had been compelled to agree to the verdict without being able to give it due deliberation because he was a very busy man with a sick wife and was much worried, but in answer to questions put by the judge he ratified the statement that that was his verdict. It was held that the statement made by said juror did not vitiate the verdict.

The facts are stated in the opinion.

*Messrs. Willis Sweet* and *Manuel F. Rossy* for appellant.

*Mr. Charles E. Foote, fiscal,* for The People.

MR. JUSTICE DEL TORO delivered the opinion of the court.

The following is an extract from the information filed in this case:

"On or about December 26; 1911, in the Judicial District of San Juan and during the trial of a civil suit brought by Albert A. David against J. Ross Smith in the Municipal Court of San Juan, the said Albert A. David offered in evidence as genuine a letter which he knew to have been altered fraudulently."

The accused pleaded not guilty and elected a trial by jury. The trial was held on May 16, 1912, and the jury after hearing the pleadings, the evidence and the charge of the court rendered a verdict of guilty.

Albert A. David made a motion for a new trial which the court overruled on May 27, 1912, and immediately sentenced the culprit to six months' imprisonment in the penitentiary at hard labor. From the decision denying him a new trial David took the present appeal, which came on for hearing before this court on June 10, 1913.

There were two grounds on which the motion for a new trial was based, namely:

"1. That the verdict was contrary to the evidence, because it was not proven that the document alleged to have been falsified was offered in evidence by the accused in the municipal court, and because the evidence taken as a whole was not sufficient to establish the guilt of the accused beyond a reasonable doubt.

"2. That the verdict rendered by the jury was informal, irregular, and unlawful because it was not a free expression of the opinion of all the members of the jury; that it was not unanimous and was given by Félix Negrón against his will and forced by reasons foreign to the evidence introduced at the trial, as is shown by an extract from the record attached hereto and made a part of this motion."

We will first review the evidence introduced in order to see whether or not it is sufficient to support the verdict of the jury and then we will consider the question relative to the statement made by the juror Negrón.

The substantive law governing this case is contained in section 126 of the Penal Code, which reads as follows:

"Section 126. Every person who, upon any trial, proceeding, inquiry, or investigation whatever, authorized or permitted by law, offers in evidence, as genuine or true, any book, paper, document, record, or other instrument in writing, knowing the same to have been forged, or fraudulently altered or antedated, is guilty of felony."

In order, then, that the offense charged may be held to have been committed, three essential elements must be shown:

1. A proceeding, inquiry, or investigation authorized or permitted by law;

2. A book, paper, document, record, or other instrument in writing which has been forged, fraudulently altered or antedated;

3. A person who, knowing that the book, paper, document, record, or other instrument in writing, has been forged, fraudulently altered or antedated, offers the same in evidence, as genuine or true, in the proceeding, inquiry, or investigation, authorized or permitted by law.

The existence of the first element was proven. A civil action brought in a municipal court for the recovery of a debt is a proceeding authorized by law, and in the case at bar the testimony of the judge and the clerk of the municipal court, as well as the original record itself, prove that Albert A. David brought an action against James Smith in said municipal court for the recovery of a debt.

The existence of the second element was likewise proven. A letter was fraudulently altered, which letter reads as follows:

"September 18, 1911. Dear Sir: If you find a purchaser for my contract on the Guy H. Oyster property any time within four months for the sum of $6,000, or more, I will allow you a commission of 5 per cent. If sold for less than the above sum, the commission to be 5 per cent on the first $1,000 and 2½ per cent on the balance of the price

sold for.   J. Ross Smith.   To Capt. A. A. David.   N. B.—The above agreement or· offer is not to prevent me from selling the property in the meantime if I find an independent purchaser.   J. Ross Smith.''

The fraudulent alteration of the letter consists in the substitution of the words "four months" for the words "one month.''   That such alteration had been made was admitted by the accused himself, and the fact that it was fraudulent was proven as follows:

David, the accused, testified that the alteration was made by Smith himself, who had signed the letter.   The jury did not believe David but gave credence to Smith's testimony to the effect that he wrote the letter but not the altered words; that the original letter which he delivered to David read "one month" and that he had not seen the letter again until it was presented in the court.   The jury also gave credence to the testimony of the municipal judge to the effect that when the document was introduced in evidence Smith was surprised and said that it was false, and to the testimony of the lithographer, Julio Snach, who, explaining his reasons for his conclusions, stated that the alteration had not been made by the same person who wrote the letter and that the ink used to make the alteration was different from that employed in writing the letter.   The expert witness for the defense, Timothée, only testified in substance that he could not determine by a mere examination of the letter whether the person who wrote the letter was the same person who made the alteration.

And, finally, the existence of the third element was established also.   A person (the accused) knowing that the letter had been fraudulently altered, offered the same in evidence as genuine in the action brought by him against Smith in the municipal court for the recovery of a debt.   The evidence shows that on September 18, 1911, Smith commissioned David to sell a property belonging to the former, which had been levied on and was to be sold at public auction on December 1, 1911, giving him a month in which to dispose of the property

and offering to pay him a certain commission. At the expiration of the month the property was not sold, but was disposed of later by the owner himself without the intervention of David. The latter demanded his commission which Smith refused to pay. Thereupon David instituted the suit in the municipal court and offered in evidence the letter which had been fraudulently altered, which letter was of paramount importance in the suit because if the words "four months" were genuine, then the sale was effected within the period of the commission given to David by Smith.

In view, then, of the facts shown by the evidence, taking into account the manner in which the alteration appears, which was made apparently with the intention of its escaping detection, and the fact that the period of four months, which would expire after the date set for the auction sale, was unnecessarily long in view of the fact that it was Smith's object to find a good purchaser before said sale took place, and considering all the circumstances of the case, we must conclude that the evidence supports the verdict of the jury.

Now let us examine the second question raised. When the jury returned to the courtroom with the verdict the following took place: The judge inquired: "Do the parties desire to poll the jury?" Falcón: "Yes, sir." "Angel Rivero, is that your verdict?" "Yes, sir." "José A. Rexach, is that your verdict?" "Yes, sir." "Ramón Daubón, is that your verdict?" "Yes, sir." "Carlos Preston, is that your verdict?" "Yes, sir." "Justino Díaz, is that your verdict?" "Yes, sir." "Jorge Fernández Latimer, is that your verdict?" "Yes, sir." "Segundo Más, is that your verdict?" "Yes, sir." "Manuel Campos, is that your verdict?" "Yes, sir." "Ramón Berríos, is that your verdict?" "Yes, sir." "José Escalera, is that your verdict?" "Yes, sir." "José G. Nieves, is that your verdict?" "Yes, sir." "Félix Negrón, is that your verdict?" "Yes, sir, that is my verdict; but I should state that I am a very busy working man, and in the second place, I have a sick wife and the ver-

dict has caused me a great deal of labor.'' Judge: ''That is another question.'' Falcón: ''I desire that the statement of the juror be entered in the record. From what the juror has said it may be inferred that he has been compelled to agree to the verdict.'' Judge: ''That is not so. The defense must not anticipate ideas that have not been expressed by the juror. Sit down.'' Judge: ''What do you mean by what you have said, juror?'' Juror: ''I mean to say that I have been compelled to agree to the verdict without being able to give it due deliberation, because I am a very busy man with a sick wife and I am much worried.'' Judge: ''We have nothing to do with your reasons for rendering the verdict, the question is whether or not that is your verdict.'' Juror: ''That is my verdict.'' Judge: ''The verdict is formal and is accepted and the court declares the accused convicted of the crime of falsifying evidence and will pass sentence on Monday at 9 a. m.'' Falcón: ''The defense takes exception to the ruling of the court, based on the statement made by the juror.''

As the juror finally answered categorically ''That is my verdict,'' we are of the opinion that the verdict is valid, basing the opinion on the jurisprudence which we will cite.

''There is nothing to raise a suspicion that the verdict was not the result of the conscientious and unanimous conviction of the jurors. One of them hesitated at first, as any man may upon so solemn a question; but, upon consultation with his fellows, and deliberation, he united publicly and of his own accord in the verdict.'' *State* v. *Godwin* (N. C.), 44 Am. Dec., 42, 44.

''There was no error in overruling the motion upon the sixth ground thereof, to-wit, that one of the jurors, when polled, answered that he had agreed to the verdict, but had agreed to it reluctantly. If a juror agrees to a verdict, that in law is sufficient. If verdicts are to be set aside because some of the jurors agree to them reluctantly, very few verdicts in important cases would be allowed to stand.'' *Parker* v. *State* (Ga.), 6 S. E. Rep., 600, 601.

''After the jury had returned their verdict to the court they were polled, and each juror, with one exception, answered that the verdict returned was his verdict, and that juror, a Mr. Chaplin, at first

answered that he 'consented to it under protest'; and again he answered: 'I did consent under protest.' The court then said to the juror: 'Mr. Chaplin, is this your verdict?' and the juror answered: 'It is; but I consented to it under protest.' The court then discharged the jury. Immediately after the discharge of the jury, and not before, the counsel for the plaintiff objected to the receiving of the verdict, but the court overruled the objection. Under the circumstances of this case, we think no error was committed in this respect." *Wyley* v. *Bull* (Kan.), 20 Pac. Rep., 855, 857.

"It was expressly stated in the verdict that the defendant was found guilty of murder in the first degree, *as charged in the indictment,* and he was charged in the indictment as a principal and not as an accomplice. When the jurors answered that this was their verdict, it is to be presumed that they understood the meaning of the same. It was never intended, we think, in polling a jury, to permit the jurors to be interrogated further than to ask each of them the direct question, 'Is that your verdict?' If he answer in the affirmative, his answer is conclusive, and further inquiry is not permissible. If the rule were otherwise, each juror might be subjected to a searching examination with a view to showing that he had been mistaken in the verdict he had rendered and solemnly announced to be his verdict. Such a practice would be unreasonable and detrimental to the ends of justice." *Bean* v. *The State,* 17 Texas Ct. of App., 60, 69.

In view of all the foregoing and having examined the transcript of the record and arrived at the conclusion that no fundamental error has been committed, we are of the opinion that the judgment appealed from should be affirmed.

*Affirmed.*

Chief Justice Hernández and Justices Wolf and Aldrey concurred.

Mr. Justice MacLeary did not take part in the decision of this case.